[Cite as *State v. Stringer-Smith*, 2026-Ohio-2976.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2026-01-002 |
| vs. | : | OPINION AND JUDGMENT ENTRY 8/3/2026 |
| GARRETT STRINGER-SMITH, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 25CR014447

Eric E. Marit, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Stephenie N. Lape, PLLC, and Stephenie N. Lape, for appellant.

**O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Garrett Stringer-Smith, pled guilty to ten counts of sexual battery, stemming from a sexual relationship he had with one of his high school students. The Preble County Court of Common Pleas imposed a prison term on Stringer-Smith for each

count, to be served consecutively to one another (for a total of 13 years). Stringer-Smith now appeals the consecutive nature of his sentences.

{¶ 2}     Because the trial court failed to make the statutorily required finding that the consecutive sentences were proportionate to the danger Stringer-Smith posed to the public, we conclude that the sentence is contrary to law. We also conclude the record is unclear on whether the trial court considered Stringer-Smith to be a danger to the public. Accordingly, we reverse the judgment of the trial court and remand the matter for a new sentencing hearing limited to the issue of consecutive sentencing.

**Factual and Procedural Background**

{¶ 3}     Stringer-Smith was a band teacher at a local high school. He had been "Marcy's" (an anonymized name to protect privacy) band teacher since she was in the sixth grade. When Marcy was 16 years old, Stringer-Smith began discussing her mental health with her during lunch periods at school. The two began communicating through Remind Text, a school-sanctioned messaging application in January 2024. A few months later, they had exchanged personal phone numbers and begun following one another on Instagram. During Marcy's senior year, beginning in August 2024, Stringer-Smith taught five of her classes.

{¶ 4}     One month into Marcy's senior year, when she was 17 years old, Stringer-Smith invited her to his home, claiming he needed her for "support" and instructing her not to park directly in front of the residence. Just a few weeks later, he again invited her to his home, told her that he wanted to be around her, and kissed her for the first time.

{¶ 5}     The relationship quickly became sexual. Less than two weeks after Stringer-Smith first kissed Marcy, he arranged to meet her in a church parking lot, where they engaged in oral and vaginal intercourse. Their sexual relationship continued for five months. During that time, Stringer-Smith led Marcy to believe that he loved her and

intended to divorce his wife. He also confided in her about his struggles with pornography and alcohol and frequently purchased gifts for her.

{¶ 6} Evidence showed that Stringer-Smith engaged in sexual intercourse with Marcy on 27 occasions, including 23 occasions while she was still 17 years old. He also had sexual intercourse with her on her 18th birthday and on three subsequent occasions. Although Marcy declined to exchange nude photographs until she turned 18, Stringer-Smith sent her nude photographs while she was still a minor and continued doing so after she turned 18.

{¶ 7} The evidence further established that two sexual encounters occurred on school grounds. Additional encounters took place in Stringer-Smith's vehicle and at his home while his children were present. DNA testing later revealed the presence of both Stringer-Smith's and Marcy's DNA on bedding recovered from the residence. Investigators also discovered a bulletin-board calendar in Stringer-Smith's school office documenting each sexual encounter with Marcy. Following each encounter, Stringer-Smith drew a heart on the calendar. He colored in the heart when both he and Marcy had an orgasm and left it unfilled when only he did.

{¶ 8} The relationship ended in February 2025 after Stringer-Smith's wife discovered nude photographs of Marcy on his phone. At his wife's insistence, Stringer-Smith called Marcy and ended the relationship while his wife listened to the conversation. Even then, however, he continued communicating with Marcy through Instagram, urging her not to report the relationship and assuring her that he still loved her.

{¶ 9} On March 3, 2025, a Preble County Grand Jury indicted Stringer-Smith on 10 counts of sexual battery in violation of R.C. 2907.03(A)(7) and (B), each a third-degree felony. Stringer-Smith subsequently entered guilty pleas to all 10 counts.

**Sentencing**

{¶ 10}   At the sentencing hearing, Marcy described the profound emotional impact the relationship had on her life. She explained that she had struggled with mental health issues before the relationship and had confided in Stringer-Smith during one of the most vulnerable periods of her life. According to Marcy, she continues to suffer from depression, panic attacks, night terrors, and insomnia. She further stated that she had only recently been able to play her clarinet again because Stringer-Smith had created, in her words, "a barrier" between her and the music she once loved.

{¶ 11}   Stringer-Smith addressed the court, expressed remorse for his conduct, and submitted several letters attesting to his character.

{¶ 12}   The trial court identified several aggravating factors. It found that the physical and psychological harm suffered by Marcy was exacerbated both by her age and her mental condition. The court emphasized that Marcy had turned to Stringer-Smith for guidance and reassurance and that he exploited that trust by engaging in a sexual relationship with her. Further, the court found that he used both his position as her teacher and the relationship he cultivated with her to facilitate the offenses.

{¶ 13}   The court rejected Stringer-Smith's claim that he had not groomed Marcy. In so doing, it recounted the progression of the relationship—from communications through school-sanctioned applications, to the exchange of personal phone number, to invitations to his home under the guise of needing her "support." The court likewise rejected his attempt to mitigate his conduct by attributing it to psychological issues or a difficult childhood, observing that he had otherwise lived a productive and law-abiding life prior to the offenses.

{¶ 14}   The court nevertheless recognized several mitigating factors. It noted that Stringer-Smith had no juvenile adjudications or prior criminal convictions, had otherwise

- 4 -

led a law-abiding life, and had expressed genuine remorse. As a result, the court declined to find that he was likely to commit future offenses, observing that "[n]one of those factors apply." The court explained that its sentencing decision therefore focused "more on the punishment aspect rather than the protection of the public aspect."

{¶ 15}   The trial court imposed prison terms of 24 months on Counts 1 through 3 and 12 months on Counts 4 through 10. It ordered all prison terms to be served consecutively, resulting in an aggregate prison term of 13 years. The court also classified Stringer-Smith as a Tier III sex offender. In support of consecutive sentences, the trial court made some of the required consecutive sentencing findings, namely, that consecutive sentences were necessary to punish Stringer-Smith, that the aggregate sentence was not disproportionate to the seriousness of his conduct, and that the offenses were committed as part of a course of conduct for which the resulting harm was so great or unusual that no single prison term would adequately reflect the seriousness of the conduct. Those findings, however, were not incorporated into the trial court's written sentencing entry. Stringer-Smith now appeals, raising two assignments of error for review.

**Appeal**

*Consecutive Sentence Findings*

{¶ 16}   In his first assignment of error, Stringer-Smith argues that his sentence is contrary to law in two ways. Stringer-Smith asserts that the court did not make the statutorily required findings at the sentencing hearing and in its sentencing entry concerning proportionality related to the danger he poses to the public, at least justifying remand to make these corrections. But Stringer-Smith also argues that the underlying record in this case does not clearly and convincingly support a finding that he poses a danger to the public and therefore the imposition of consecutive sentences was contrary

to law. The answer to the first assertion is straightforward—the trial court did not make the required finding and remand for correction is warranted. The answer to the second argument is more nuanced—requiring a detailed evaluation of some equivocal statements made by the trial court. We turn first to the applicable law.

*Applicable Law*

{¶ 17}   A felony sentence is reviewed under the standard in R.C. 2953.08(G)(2). *State v. Jones*, 2026-Ohio-68, ¶ 74 (12th Dist.). Under that statute, an appellate court may modify or vacate a sentence only if clearly and convincingly finds either that the record does not support the trial court's findings under the relevant sentencing statutes or that the sentence is otherwise contrary to law. *State v. Gable*, 2024-Ohio-293, ¶ 8 (12th Dist.).

{¶ 18}   One of the sentencing statutes referenced in R.C. 2953.08(G)(2) is the consecutive sentence statute, R.C. 2929.14(C)(4). *State v. Richey*, 2023-Ohio-336, ¶ 12 (12th Dist.). Accordingly, a defendant may challenge consecutive sentences on appeal in one of two ways: (1) by arguing that the sentence is contrary to law because the trial court failed to make the findings required by R.C. 2929.14(C)(4), or (2) by arguing that the record does not support the findings the trial court made under that statute. *State v. Shiveley*, 2022-Ohio-4036, ¶ 7 (12th Dist.). These are the only two means by which the legislature has authorized appellate review of consecutive sentences. *Richey* at ¶ 12.

{¶ 19}   As relevant to Stringer-Smith, the court had to make the following findings before imposing consecutive sentences:

> (1) the consecutive sentences were necessary to protect the public from future crime or to punish the offender;
>
> (2) consecutive sentences were not disproportionate to the seriousness of the offender's conduct *and to the danger the offender poses to the public*, and

(3) at least two of the offenses were committed as part of one or more course of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(Emphasis added.) *See* R.C. 2929.14(C)(4).

{¶ 20} When imposing consecutive sentences, the trial court must make the required statutory findings at the sentencing hearing, thereby providing notice to both the offender and defense counsel. *State v. Bonnell*, 2014-Ohio-3177, ¶ 29, citing Crim.R. 32(A)(4). The court, however, is not required to recite the statutory language verbatim. Rather, consecutive sentences will be upheld if the reviewing court can discern from the record that the trial court engaged in the required analysis and the record supports the findings. *Id*.

### *Analysis*

{¶ 21} Stringer-Smith first argues that while the court addressed the seriousness of his conduct, it failed to find that consecutive sentences were not disproportionate to the danger he poses to the public. Although the State does not expressly concede error, it acknowledged at oral argument that it could not identify any portion of the record where the trial court made the finding challenged by Stringer-Smith. The State does concede, however, that a remand is necessary because the trial court failed to incorporate its consecutive-sentencing findings into the written sentencing entry.

{¶ 22} Following review, we agree with Stringer-Smith as to his first argument. Before imposing consecutive prison terms, a trial court must find both that consecutive sentences are not disproportionate to the seriousness of the offender's conduct *and* that they are not disproportionate to the danger the offender poses to the public. R.C. 2929.14(C)(4).

- 7 -

{¶ 23}   In *Bonnell*, the Ohio Supreme Court addressed a sentencing record in which the trial court described the defendant's criminal history as "atrocious" and remarked upon his "lack of respect for society." *Bonnell* at ¶ 33. The Court concluded that those comments permitted a reviewing court to discern that the trial court found consecutive sentences necessary to protect the public. *Id*. at ¶ 34. The comments, however, did not permit the reviewing court to conclude that the trial court had made the separate proportionality finding required by R.C. 2929.14(C)(4). Accordingly, the Court held that the imposition of consecutive sentences was contrary to law. *Id*. *See State v. Beasley*, 2018-Ohio-493, ¶ 260-262 (remanding for resentencing after concluding that the trial court failed to make the proportionality finding required by R.C. 2929.14[C][4]).

{¶ 24}   Here, the trial court found that consecutive sentences were necessary to punish Stringer-Smith, that they were not disproportionate to the seriousness of his conduct, and that the offenses were committed as part of a course of conduct for which the resulting harm was so great or unusual that no single prison term adequately reflected the seriousness of the conduct. However, the trial court never made a finding that consecutive sentences are not disproportionate to the danger Stringer-Smith poses to the public. R.C. 2929.14(C)(4). If the record was clear on the danger Stringer-Smith poses to the public, our task would be straightforward—the trial court could correct the record by making all of the required findings at a sentencing hearing upon remand.

{¶ 25}   However, the record before us is not clear on the question of what the trial court concluded regarding Stringer-Smith's danger to the public. Indeed, the court expressly stated that it was focusing "more on the punishment aspect rather than the protection of the public aspect" after concluding that the recidivism factors indicating a likelihood of future offenses were not present. Read one way, the court's statement regarding focusing on punishment combined with its observation that "[n]one of [the

recidivism] factors apply" could be viewed as the trial court's effective disclaimer of the public danger factor. Read another way, the trial court's greater ("more on") focus on punishment rather than public danger could mean that while Stringer-Smith posed some danger to the public, the trial court simply found punishment to weigh more heavily in its analysis than the public danger factor. We think the trial court is best positioned to clarify its findings upon remand.

{¶ 26} We express no opinion as to whether consecutive sentences may ultimately be imposed on remand. However, we emphasize that our remand should not be understood as inviting the trial court to merely supplement its prior findings. Any findings made under R.C. 2929.14(C) must be supported by the record before the court. Although the trial court need not recite the statute verbatim, the record must permit a reviewing court to discern that the court made findings addressing both components of the proportionality requirement. *Bonnell*, 2014-Ohio-3177, at ¶ 29. As in *Bonnell*, the record here does not permit us to glean that the trial court found consecutive sentences were not disproportionate both to the seriousness of the offender's conduct and to the danger he poses to the public. *Id*. at ¶ 36.

{¶ 27} Accordingly, we sustain Stringer-Smith's first assignment of error, reverse the portion of the sentence imposing consecutive prison terms, and remand the matter for a new sentencing hearing limited to the issue of consecutive sentencing. We further note, and agree with both parties, that the sentencing entry is independently deficient because it fails to incorporate the consecutive-sentence findings into the sentencing entry. *Id.* at ¶ 37.

*Consistency in Sentencing*

{¶ 28} In his second assignment of error, Stringer-Smith argues that his sentence is contrary to law because it is inconsistent with sentences imposed on similarly situated

- 9 -

offenders. Our resolution of the first assignment of error renders that issue moot. Accordingly, we need not address the merits of the second assignment of error. App.R. 12(A)(1)(c).

**{¶ 29}** Judgment reversed and remanded.

HENDRICKSON, P.J., concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J. CONCURRING IN PART AND DISSENTING IN PART.**

**{¶ 30}** In assessing a trial court's compliance with R.C. 2929.14(C)(4), we examine (1) whether the trial court applied the correct analysis and (2) whether the record contains evidence supporting the trial court's findings. *State v. Vokas,* 2024-Ohio-171, ¶ 12 (10th Dist.). When imposing consecutive sentences, the record must reflect that the trial court made the requisite findings and incorporated them into its entry, but the trial court has no obligation to explain or articulate reasons for those findings. *State v. Bonnell*, 2014-Ohio-3177, syllabus.

**{¶ 31}** If appellate review can discern that the trial court applied the correct analysis and that the record contains evidence supporting the court's findings, consecutive sentences should be upheld. *Id.* In this respect, appellate courts have been deferential to trial courts when reviewing challenges to the lower court's consecutive-sentence findings and will deem the trial court to have made the requisite findings if they can reasonably be gleaned from the record. *Vokas*.

**{¶ 32}** I agree with my colleagues and the State that certain of the trial court's findings at Stringer-Smith's sentencing should have been incorporated into the court's sentencing entry. For this reason, I find that a remand to the trial court for a nunc pro tunc entry is appropriate. However, I disagree with my colleagues who conclude that the record

does not show the trial court made the findings necessary for consecutive sentences at Stringer-Smith's sentencing hearing and that the sentence was therefore contrary to law.

{¶ 33} My colleagues rely on the fact that, when challenged at oral argument, the State could not identify a specific portion of the record showing that the trial court found Stringer-Smith to be a danger to the public. This reliance is unfair because the State's argument was that the trial court's lengthy discussion, in its entirety, demonstrated that the trial court had found consecutive sentences were not disproportionate to the danger Stringer-Smith posed to the public.

{¶ 34} My colleagues acknowledge that Stringer-Smith cultivated the victim to facilitate multiple offenses. In a position of authority and role model, Stringer-Smith targeted a child with fragile emotional health and worked to gain the child's trust under the guise of helping her. Like the proverbial wolf in sheep's clothing, he spent considerable time and effort, yet it was only to help himself.

{¶ 35} It goes without saying that the trial court considered Stringer-Smith's manipulative and deceptive conduct in committing his crimes to be that of a sexual predator, a person who poses a clear danger to the public.[1] The fact that Stringer-Smith will not be able to victimize a child student again, and thus has little chance of recidivism, is of little consequence to the danger he poses to the public, particularly as a Tier III child sex offender. The trial court's classification of Stringer-Smith as a Tier III child-victim sex offender is, in and of itself, designed to protect the public from the danger that he poses

---

1. Stringer-Smith's deception and trickery did not just extend to his child victim. When his wife demanded that Stringer-Smith call the victim in her presence and end his sexual involvement with the victim, Stringer-Smith did so to appease his wife. He later told the victim that he did not mean what he said to her on the phone. When someone lies and deceives, like Stringer-Smith in this case, it becomes difficult to believe self-serving claims of remorse after being caught.

upon his release from prison.[2]

{¶ 36} The extensive deception and pattern of conduct across multiple offenses kept the court focused on the need to punish Stringer-Smith. The trial court specifically found that consecutive sentences were necessary to punish Stringer-Smith. The trial court's statement that it was focused "more on the punishment aspect than the protection of the public" reveals that the court was considering both the danger Stringer-Smith posed to the public and the need for punishment. The trial court simply gave one finding more weight than the other.[3] Merely because one finding is given more weight than another is not cause for remand for a new sentencing hearing.

{¶ 37} Consecutive sentences must be upheld "'as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings.'" *State v. Deaton*, 2026-Ohio-2654, ¶ 65 (12th Dist.) (Piper, J., dissenting), quoting *Bonnell*, 2014-Ohio-3177, at ¶ 30. For example, in *State v. Hollon,* 2025-Ohio-2725 (12th Dist.)*,* this court noted that although the trial court's language did not track the statutory findings, we were still able to "discern from that language used that the trial court intended to and properly made findings under R.C.2929.14(C )(4)(b)." The same is true here, despite my colleagues' request to the trial court for clarification. Yet the record needs no clarification; therefore, I would overrule Stringer-Smith's first assignment of error but remand to the trial court to issue a nunc pro tunc sentencing entry incorporating the consecutive sentence findings it made at Stringer-Smith's sentencing hearing.

---

2. The Tier III child-victim sex offender classification has stringent reporting requirements and notification requirements to the community, nearby schools, and daycares. It is obvious that the General Assembly passed legislation to make the public aware of the potential danger posed by a Tier III child-victim sex offender.

3. Because the court was considering the need to protect the public, it is only logical the court was also considering the danger Stringer-Smith posed to the public.

{¶ 38} I would also overrule Stringer-Smith's second assignment of error, in which he challenged his sentence as being inconsistent with sentences imposed on similarly situated offenders. The trial court characterized Stringer-Smith's case as being identical to another case. Yet cases always have factual differences. More importantly, however, is the fact that "[t]he statute does not instruct courts to consider the seriousness of the offender's conduct or danger in relationship to similar offenders." *State v. Grashel*, 2025-Ohio-580, ¶ 34 (4th Dist.). "Thus, R.C. 2929.14(C)(4) does not require trial courts or reviewing courts 'to engage in a comparative analysis of other cases.'" *Id*., quoting State *v. Glover,* 2024-Ohio-5195, ¶ 59.

{¶ 39} The trial court's reference to a similar case with a similar sentence had no effect on its finding that Stringer-Smith's sex crimes necessitated consecutive sentences. While the trial court may have attempted to explain its reasons for imposing consecutive sentences, as expressed in my *Deaton* dissent and the syllabus in *Bonnell*, a trial court has no obligation to articulate its reasons in support of findings that necessitate consecutive sentences. Therefore, the reference to a similar case is of no consequence, and because the assignment of error is meritless, reversal is not required.

{¶ 40} The trial court applied the correct analysis, and the record contains evidence supporting the trial court's findings. Accordingly, for the reasons outlined above, I concur with my colleagues in remanding to the trial court to include in its sentencing entry the findings it pronounced at Stringer-Smith's sentencing hearing. However, I respectfully dissent from my colleague's determination that a new sentencing hearing is required.

_____

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to sentencing only and is remanded for the limited purpose of resentencing in accordance with law and consistent with the above Opinion.

It is further ordered that a mandate be sent to the Preble County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed to appellee.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Melena S. Siebert, Judge*